# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **ASHLEY STEWART** | ) | **Case No.   3:23-cv-2436** |
| **c/o Charles E. Boyk Law Offices, LLC** | ) | |
| **1500 Timberwolf Dr.,** | ) | |
| **Holland, Ohio 43528** | ) | |
| | ) | **JUDGE** |
| **As Administrator of the Estate of** | ) | |
| **JARED D. STEWART,** | ) | |
| | ) | |
| | ) | **COMPLAINT** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **CORRECTIONS CENTER OF** | ) | **Jury Demand Endorsed Hereon** |
| **NORTHWEST OHIO** | ) | |
| **03151 County Road 2425** | ) | |
| **Stryker, OH 43557,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CORRECTIONS COMMISSION OF** | ) | |
| **NORTHWEST OHIO** | ) | |
| **03151 County Road 24.25** | ) | |
| **Stryker, OH 43557,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CORRECTIONS CENTER OF** | ) | |
| **NORTHWEST OHIO BOARD** | ) | |
| **03151 County Road 24.25** | ) | |
| **Stryker, OH 43557,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **EXECUTIVE DIRECTOR DENNIS** | ) | |
| **SULLIVAN,** | ) | |
| **CORRECTIONS CENTER OF** | ) | |
| **NORTHWEST OHIO** | ) | |
| **03151 County Road 24.25** | ) | |
| **Stryker, OH 43557,** | ) | |
| | ) | |
| | ) | |

1

**Individually and in his Official** )
**Capacity as Executive Director of** )
**Corrections Center of Northwest Ohio,** )
  )
**and** )
  )
**SOUTHERN HEALTH PARTNERS** )
**c/o Statutory Agent** )
**CT Corporation** )
**1300 East 9th Street** )
**Cleveland, Ohio 44114** )
  )
**and** )
  )
**DR. ANAS ALZUHAILI** )
**MEDICAL DIRECTOR,** )
**CORRECTIONS CENTER OF** )
**NORTHWEST OHIO** )
**03151 County Road 24.25** )
**Stryker, OH 43557,** )
  )
**Individually and in his Official** )
**Capacity as Medical Director in** )
**Corrections Center of Northwest Ohio,** )
  )
**and** )
  )
**HEALTH ADMINISTRATOR** )
**CORRECTIONS CENTER OF** )
**NORTHWEST OHIO** )
**03151 County Road 24.25** )
**Stryker, OH 43557,** )
  )
**Individually and in his Official** )
**Capacity as Health Administrator in** )
**Corrections Center of Northwest Ohio,** )
  )
**and** )
  )
**JOELYN ETGEN, NP** )
**ANGELA BRUINIX, RN** )
**CORRECTIONS CENTER OF** )
**NORTHWEST OHIO** )
**03151 County Road 24.25** )
**Stryker, OH 43557,** )
  )

**Individually and in their Official**                    )
**Capacities as Nurses in Corrections**                   )
**Center of Northwest Ohio,**                             )
                                                          )
**and**                                                   )
                                                          )
**JOHN AND JANE DOES #1-5**                               )
**CORRECTIONS STAFF**                                     )
**CORRECTIONS CENTER OF**                                 )
**NORTHWEST OHIO**                                        )
**03151 County Road 24.25**                               )
**Stryker, OH 43557,**                                    )
                                                          )
**Individually and in their official**                    )
**capacities as Corrections Staff in**                    )
**Corrections Center of Northwest Ohio,**                 )
                                                          )
**and**                                                   )
                                                          )
**JOHN AND JANE DOES #6-10**                              )
**MEDICAL STAFF**                                         )
**CORRECTIONS CENTER OF**                                 )
**NORTHWEST OHIO**                                        )
**03151 County Road 24.25**                               )
**Stryker, OH 43557,**                                    )
                                                          )
**Individually and in their official**                    )
**capacities as Medical Staff in**                        )
**Corrections Center of Northwest Ohio,**                 )
                                                          )
**and**                                                   )
                                                          )
**JOHN AND JANE DOES #11-15**                             )
**POLICY MAKERS FOR CCNO AND**                            )
**SOUTHERN HEALTH PARTNERS**                              )
**CORRECTIONS CENTER OF**                                 )
**NORTHWEST OHIO**                                        )
**03151 County Road 24.25**                               )
**Stryker, OH 43557,**                                    )
                                                          )
**Individually and in their official**                    )
**capacities as Policy Makers.**                          )
                                                          )
                                                          )
                **Defendants.**                           )
                                                          )

3

## **INTRODUCTION**

1.     This civil rights and wrongful death action challenges Defendants' failure to provide constitutionally adequate medical care and medical care consistent with community standards to Jared Stewart. From the time he entered the jail on July 13, 2021, Defendants knew that Mr. Stewart suffered from serious life-threatening medical conditions, and they deliberately disregarded the life-threatening risks to him. Defendants knew that prior to entering jail, Mr. Stewart suffered a sudden cardiac death episode that led to the placement of a pacemaker and defibrillator.  These implanted heart devices required routine monitoring in order that cardiac data could be transmitted to his health providers.   Defendants were aware that failure to monitor and/or ensure data was transmitted could lead to a delay in arrhythmia detection or device alerts – which could be fatal.  Defendants were also aware prior to entering jail, that Mr. Stewart had undergone an aortic valve replacement.  The valve replacement required that Mr. Stewart be on blood thinners to ensure the valve did not malfunction.   Defendants were aware that in order to ensure Mr. Stewart had the proper dose of blood thinner, he needed frequent blood testing to prevent clotting or bleeding problems the medication could cause.  Defendants were also aware that Mr. Stewart was on numerous other medications for serious medical conditions, including medications that treated his blood pressure.

2.     On December 27, 2021, after numerous and repeated failures on the part of Defendants, after blood tests that repeatedly showed that Defendants' were not properly administering his medications - causing his blood to be dangerously thin, and after numerous requests by Mr. Stewart for medical treatment, and after clear

4

complaints about feeling ill and dizzy, Mr. Stewart lost consciousness and fell and hit the back of his head.  He was transported from the jail to a hospital where it was discovered through blood tests (that Defendants failed to perform) that Mr. Stewart's blood was too thin and he was at serious risk for dangerous bleeding.  He was stabilized and released back to Defendants.   Less than a week later, he again lost consciousness fell and hit his head.  Rather than provide immediate medical attention, jail staff simply asked him why he was on the floor.  Mr. Stewart attempted to stand without assistance, but lost consciousness again and fell forward, headfirst to the hard floor.  Despite his loss of consciousness and bleeding from his head, Defendants, left Mr. Stewart lay there while they called for an ambulance.  Mr. Stewart was transported from the jail to the hospital.  His critical condition required him to be life-flighted from Bryan Community Hospital to Mercy St. Vincent's Toledo.   Tragically, on January 7, 2022, approximately 1 day before he would have completed his 180-day jail sentence, Mr. Stewart died from the trauma.   Defendants' deliberate indifference to Mr. Stewart's serious medical needs and their negligence in providing medical care to Mr. Stewart proximately caused him to suffer the syncope episode, the head injury, the internal bleeding, and his death.

## JURISDICTION

3.  Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).  Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. Venue is proper in this Division.

## PARTIES

4.  Plaintiff Ashley Stewart is the Administrator of the Estate of Jared D. Stewart who is

5

deceased. Ms. Stewart brings this suit as the Administrator of the Estate of Jared Stewart for the benefit of his next of kin and heirs.

5.  Defendant Corrections Center of Northwest Ohio ("CCNO") is a full-service adult detention facility as defined in the Ohio Revised Code and the Ohio Administrative Code. CCNO is located in Stryker, Ohio and houses inmates from Defiance, Fulton, Henry, Lucas, and Williams counties. CCNO is governed by a Board. Defendant CCNO is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

6.  Defendant Corrections Commission of Northwest Ohio was formed in 1987 to oversee the construction and operation of CCNO. The five member jurisdictions of the commission include Defiance, Fulton, Henry, Lucas, and Williams counties. Defendant CCNO is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

7.  Defendant CCNO Board is a coalition of local governmental entities responsible for overseeing the operation of CCNO. Defendant CCNO Board is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

8.  Defendant Dennis Sullivan was at all times relevant to this action the Executive Director of CCNO.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and in his official capacity.  He was at all times relevant a county policy maker with respect to customs, practices, policies and procedures at CCNO.

9.  Southern Health Partners is and was at all times relevant to this action a nursing and medical services provider under contract with CCNO, providing medical services in

6

CCNO. Southern Health Partners is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Southern Health Partners was at all times relevant a policy maker with respect to customs, practices, policies and procedures at CCNO.

10.    Defendant Dr. Anas Alzuhaili is and was at all times relevant to this action the Medical Director at CCNO. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity. Dr. Alzuhaili was at all times relevant a policy maker with respect to customs, practices, policies and procedures at CCNO.

11.    Defendant Health Services Administrator is a supervisor responsible for nurses CCNO. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacity. Defendant Health Services Administrator was at all times relevant a policy maker with respect to customs, practices, policies and procedures at CCNO.

12.    Defendant Joelyn Etgen, NP is a Nurse at CCNO. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

13.    Defendant Angela Bruinix, RN is the Director of Nursing at CCNO.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. She is sued in her individual and official capacity.

14.    Defendants John and Jane Does #1-5, names and addresses unknown at this time, are Corrections staff/individuals and/or businesses at CCNO. Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

They are sued in their individual and official capacities.

15. Defendants John and Jane Does #6-10, names and addresses unknown at this time, are Medical staff/individuals and/or businesses at CCNO. Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. They are sued in their individual and official capacities.

16. Defendants John and Jane Doe #11-15, names and addresses unknown at this time, are individuals and/or corporations that are responsible for establishing policies, procedures and customs that ensure CCNO operates in a manner that keeps inmates safe. They are responsible for training those employed at CCNO to ensure the safety and wellbeing of the CCNO's inmates. They are also responsible for investigating incidents where inmates are harmed to ensure that such incidents are prevented. They were at all times relevant policy makers for CCNO and Southern Health Partners. Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  They are sued in their individual and official capacities.

**FACTS**

17. On July 13, 2021, Mr. Stewart was booked into CCNO to serve a 180-day sentence.

18. On July 15, 2021, a Medical Intake Form was completed by Defendant Joelyn Etgen, N.P.

19. During this medical intake,  Defendants' reviewed and documented Mr. Stewart's history of aortic valve replacement, cardiac arrest, medical dependency on blood thinners because of the heart-valve replacement, pacemaker and defibrillator implants and the need for his cardiac medical team to remotely monitor them, his high blood pressure history and prescription medications needed to control it.  It was specifically

noted that due to the blood thinners he was on, his International Normalized Ratio (INR), which indicates how long it takes blood to clot, needed to be between 2.5 to 3.5.  The higher the number the thinner his blood.  To determine INR, requires routine blood draws/testing.

20. As an inmate, Mr. Stewart was entirely dependent on Defendants to conduct blood draws, review results, and administer him his medications needed to keep him within the therapeutic range.

21. At the time Mr. Stewart was booked, his INR was within the required therapeutic range.

22. Within the first two weeks at CCNO, his INR climbed to 4.57.

23. After the first month, his INR climbed to 8.8.

24. Medical staff would frequently fail to do blood draws and, when they did do them, they often negligently did them – poking Mr. Stewart nine times on one particular draw. They also failed to follow-up on the results of the blood draws – delaying adjustments Mr. Stewart critically needed to his medication.

25. In response his extremely high INR, medical staff decided to withhold his medication and/or change his dosage, causing his INR to dramatically fall below the therapeutic range, to 1.71 less than a week later.

26. Despite his repeatedly reporting his symptoms to Defendant medical staff that indicated his INR was low or high, which included weakness and dizziness, Defendants were dismissive and continued to negligently withhold and/or administer monitoring and treatment.

27. In addition to his blood thinner medication, Mr. Stewart was also prescribed

metoprolol – a beta blocker used to treat high blood pressure and heart rhythm disturbances.

28.   Too high a dose of metoprolol can slow the heart and/or drop blood pressure - making it difficult to breath, causing chills, fatigue, and dizziness/fainting spells.

29.   Mr. Stewart made repeated complaints to medical staff that he was tired, and cold all the time.  He also questioned medical staff as to whether the dosage of metoprolol they were administering to him may be too high.  His complaints were disregarded.

30.   Mr. Stewart had a pacemaker and a defibrillator implanted in his body.  These are two separate machines.  The pacemaker was monitored by a Medtronic machine and the defibrillator by a Boston Scientific machine.  The machines, which required a WIFI connection, allowed Mr. Stewart's University of Michigan medical team to remote monitor his heart for any irregularities or stoppage.

31.   Defendants' understood that the monitors and a WIFI connection were required for monitoring his cardiac condition and cleared them for use in the jail.  Mr. Stewart depended on Defendants to ensure the monitors were connected to WIFI and to give him access so data could be remotely sent to his cardiac team.

32.   Despite this, Defendants repeatedly failed to provide WIFI access and Mr. Stewarts doctors at the University of Michigan were unable to monitor his condition.

33.   Defendant Dr. Anas Alzuhaili was the medical director for CCNO, and despite knowing the seriousness of Mr. Stewart's condition and the care required, it appears he failed to provide oversight or collaboration with the nursing staff, including Defendant Joelyn Etgen, N.P., regarding Mr. Stewart's care.

34.   Despite repeated requests by Mr. Stewart to see Dr. Alzuhaili, Defendant Etgen

refused to schedule him – making it clear that she was in charge and he would not see Dr. Alzuhaili unless she authorized it.

35. As a result of missed medications, dosage issues, the failures to regulate his INR, the failures to do blood draws to even test his INR, the failure to provide/permit his pacemaker and/or defibrillator to be remotely monitored by his medical team at the University of Michigan, and in negligently providing treatment in contradiction to his medical team's orders, Mr. Stewart contacted his lawyer.

36. Mr. Stewart's attorney reviewed the negligent medical treatment Defendants were providing Mr. Stewart and filed a motion with the Williams County Court of Common Pleas to amend Mr. Stewart's sentence in order that he may serve the last few months of his sentence under home confinement so he could get the medical care his condition required.

37. In response to the motion, Defendant Angela Bruinix, the Director of Nursing at CCNO, was subpoenaed to appear at Mr. Stewart's October 6, 2021, hearing to provide testimony regarding the medical care he had been receiving.  However, nurse Bruinix failed to appear and instead submitted a three-sentence letter stating, she was "personally familiar with [Mr. Stewart's] medical condition and the care he has been receiving. At this time, his medical needs can be met at CCNO."

38. While it was certainly the case that Mr. Stewart's medical needs could have been met at CCNO, it was abundantly apparent that they were not being met.

39. Following the hearing, and despite Defendants' assurances, Defendants continued to fail to take needed blood draws, monitor Mr. Stewart's INR, and adjust dosages to keep it within therapeutic range.

40.  On or about November 17, 2021, Mr. Stewart's INR came back at 1.69.

41.  Over the next several weeks, Defendants failed to administer his medication, negligently administered his medication, and failed to do and/or follow-up on several INR draws.

42.  On December 27, 2021, after numerous and repeated failures on the part of Defendants, Mr. Stewart lost consciousness, fell and hit the back of his head.  He was transported by ambulance from the jail to a hospital where it was discovered through blood tests - that Defendants failed to perform -that his INR was 5.62 and he was at serious risk for dangerous bleeding.

43.  After Mr. Stewart was stabilized, he was returned to CCNO, with the directive to monitor his condition and do INR testing to monitor his blood.

44.  Unfortunately, Defendants continued to provide the same negligent care that led to his loss of consciousness and head injury.   Medical staff failed to do INR draws, failed to administer medicine, were confused on changes to his doses, and internally commented that they did not know what was happening with his medications.

45.  Less than a week later, Mr. Stewart again lost consciousness fell and hit his head on the shower floor.  Rather than provide immediate medical attention, jail staff simply asked him why he was on the floor.

46.  Mr. Stewart attempted to stand which Defendants looked on, but lost consciousness again and fell forward, headfirst to the hard shower floor.

47.  Despite his loss of consciousness and bleeding from his head, Defendants, left Mr. Stewart lay there while they called for an ambulance.  Mr. Stewart was transported from the jail to the hospital.  His critical condition required him to be life-flighted

from Bryan Community Hospital to Mercy St. Vincent's Toledo.

48. Tragically, on January 7, 2022, approximately 1 day before he would have completed his 180-day jail sentence, Mr. Stewart died from the trauma.

49. Defendant medical staff had a duty to care for Mr. Stewart.

50. Defendants knew Mr. Stewart was suffering a serious medical condition that required active monitoring and treatment.

51. From July 13, 2021, to January 2, 2022, Defendants failed to take adequate measures to monitor and treat Mr. Stewart's serious medical condition.

52. Each of the medical Defendant's actions fell below the applicable standard of care in the community and the conduct of each was deliberately indifferent to a serious medical need.

53. Medical Defendants' failure to monitor, treat and care for Mr. Stewart's serious medical needs fell below the applicable community standard of care and was deliberately indifferent to Mr. Stewart's serious medical needs. Without the required treatment, Mr. Stewart's condition foreseeably resulted in the syncope episodes that caused his head trauma. The severity and complications of the head trauma, due to his condition and INR levels, was also foreseeable.

54. Defendants Southern Health Partners, Dr. Alzuhaili, Health Administrator, Angela Bruinix, RN, Director of Nursing, and Joelyn Etgen, N.P., and Does #6-10 failed to properly observe, monitor, examine, diagnose, and treat Mr. Stewart's serious medical needs despite the duty to do so. These Defendants failed to provide Mr. Stewart constitutionally adequate medical care and the conduct of these Defendants fell below the applicable standard of care in the community. Each of these

Defendants' medical care was deliberately indifferent, willful, wanton and reckless to Mr. Stewart's serious medical needs.

55. Defendant Dr. Alzuhaili was the physician responsible for providing medical assessment and diagnosis to all inmates in the CCNO, and was responsible for the medical care of Mr. Stewart. Defendant Dr. Alzuhaili at all times had a duty to care for Mr. Stewart. Defendant Dr. Alzuhaili failed to properly monitor, diagnose or treat Mr. Stewart's serious medical needs which resulted in his suffering and death. Dr. Alzuhaili violated the applicable standard of care in the community. Defendant Dr. Alzuhaili as deliberately indifferent to Mr. Stewart's serious medical needs.

56. Defendants Health Administrator, Bruinix, Etgen, and Does #6-10 failed to properly monitor and treat Mr. Stewart's serious medical needs which resulted in his suffering and death. At all times, these Defendants had a duty to care for Mr. Stewart. These Defendants violated the applicable standard of care in the community. These Defendants were deliberately indifferent to his serious medical needs.

57. Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers are responsible for training all of the staff at the CCNO with respect to providing medical care to inmates.

58. Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers failed to have adequate policies, procedures, customs, usages, and protocols

regarding the provision of medical care for inmates with serious cardiac needs, such as pacemaker/defibrillator monitoring and INR testing, monitoring and control. Those inadequate policies procedures, customs, usages, and protocols were the moving force behind the suffering and death of Mr. Stewart.

59.     Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers were deliberately indifferent to the serious medical needs of Mr. Stewart by failing to train and supervise staff to implement adequate jail policies, procedures, customs, usages, and protocols that would properly address the obvious and known health and safety risks experienced by inmates with serious cardiac monitoring and care needs.

60.     Mr. Stewart's serious medical condition was not properly monitored. This failure was caused by the policies, procedures, customs, usages, and protocols at CCNO.

61.     All Defendants acted negligently, maliciously, recklessly, willfully, wantonly, knowingly, intentionally, and with deliberate indifference to the serious medical needs of Mr. Stewart.

62.     Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers all had final authority on policies for inmates at CCNO and it was those policies that were the moving force behind the suffering and death of Mr. Stewart.

63.     The conduct of all Defendants shocks the conscience, violates the standards of

decency in an evolving society, and betrays the trust the public place in jail staff to provide proper medical care for those in jail custody.

64. Defendant Does #1-5 were deliberately indifferent to Mr. Stewart's serious medical conditions, disregarding his complaints, neglecting to call him when his medications were ready, failing to monitor and report health issues they observed, and failing to provide immediate assistance to Mr. Stewart after he fell and hit his head, including intervening to prevent him from trying to stand in his condition and with his obvious head trauma and history.

65. Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers conduct constitutes a pattern and practice and such conduct is a moving force behind the constitutional violations.

66. Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers failed to train and supervise staff to ensure that they are equipped to deal with inmates with serious cardiac medical needs, including cardiac device and INR monitoring needs. These failures amounted to deliberate indifference.

67. Policy Maker Defendants ratified the conduct by failing to investigate it.

68. As a direct and proximate result of Defendants' actions, Mr. Stewart suffered both physically and mentally, and died.

69. As a further direct and proximate result of Mr. Stewart's wrongful death, his

survivors, next of kin and/or heirs have suffered permanent damages, including but not limited to, grief, depression, and severe emotional distress. They have incurred funeral bills and other expenses and have suffered losses and will continue to suffer such losses into the future.

### FIRST CAUSE OF ACTION – 42 U.S.C. §1983

70. Plaintiff realleges and restates each of the above paragraphs as if fully rewritten herein.

71. Defendants have, under color of state law, deprived Jared Stewart of rights, privileges and immunities secured by the Eighth and Fourteenth Amendments to the U.S. Constitution, including, but not limited to the right to be free from cruel and unusual punishment and the right to receive adequate medical care as a jail inmate.

72. Defendants were each deliberately indifferent to Mr. Stewart's serious medical condition. Each knew that Mr. Stewart suffered from serious cardiac issues that required strict monitoring, care, and treatment and consciously disregarded the risk of severe harm to him. As a result of Defendants' conduct, Mr. Stewart suffered and died

73. Each Defendant knew that inmates who, like Mr. Stewart, who have a pacemaker/defibrillator and who are required to be on blood thinners, have serious medical needs that require constitutionally adequate medical care.

74. Despite knowledge, the Defendants failed to provide Mr. Stewart the adequate and medical care his condition required. Each Defendant was deliberately indifferent with respect to observation, monitoring, and treating. This failure by each shocks the conscience, was deliberately indifferent and was negligent, willful, wanton, and

reckless.

75.  Defendants Dr. Alzuhaili, Health Administrator, Bruinix, Etgen, and Does #6-10 failed to properly monitor and treat Mr. Stewart's serious medical needs, despite the duty to do so, and were deliberately indifferent to Mr. Stewart's serious medical needs.

76.  Defendant Does #1-5 were deliberately indifferent to the serious medical needs of Mr. Stewart when they failed to relay complaints, failed to call him when it was time for him to receive his medications, and failed to timely respond and provide medical to treat Mr. Stewart's serious medical needs.

77.  Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers failed to establish and/ or apply adequate policies, procedures, customs, usages, and protocols regarding the intake, observation, monitoring, diagnosis, treatment, and management of persons with serious and/or emergency medical conditions, including but not limited to cardiac issues involving mechanical aortic value replacements and cardiac device implants,. This failure was unconstitutional and/or inadequate and unreasonable and was the moving force behind the constitutional deprivations suffered by Mr. Stewart. There was a pattern and practice of this conduct by these Defendants.

78.  Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy

Makers failed to adequately train and supervise the jail and medical staff in the intake, observation, monitoring, assessment, and diagnosis, and medical care of inmates, like Mr. Stewart, who arrive at the jail with serious medical conditions including cardiac issues that require regular medical monitoring and treatment.

79. Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers ratified all Defendants' deliberate indifference and conduct towards Mr. Stewart's constitutional right to adequate medical care while he was an inmate at CCNO from July 13, 2021 to January 2, 2022.

80. Defendants Corrections Center of Northwest Ohio, Corrections Commission of Northwest Ohio, Corrections Center of Northwest Ohio Board, Executive Director Dennis Sullivan, Southern Health Partners, Dr. Alzuhaili, and Does #11-15 Policy Makers are liable under a theory of ratification because they each are final policymakers who approved an investigation into Mr. Stewart's death that was so inadequate as to constitute ratification of the unconstitutional conduct that caused Mr. Stewart's suffering and death. Each of these Defendants approved an investigation that failed to meaningfully investigate and punish the unconstitutional care that caused Mr. Stewart's suffering and death.

## **SECOND CAUSE OF ACTION – WRONGFUL DEATH.**

81. Plaintiff realleges and restates each of the above paragraphs as if fully rewritten herein.

82. All Defendants' actions caused the wrongful death of Jared Stewart, resulting in

damages recoverable under R.C. §2125.02.

### THIRD CAUSE OF ACTION
### NEGLIGENCE BY DEFENDANT SOUTHERN HEALTH PARTNERS

83. Plaintiff realleges and restates each of the above paragraphs as if fully rewritten herein.

84. Defendant Southern Health Partners and its employees and its agents owed a duty of reasonable medical care to Jared Stewart within the standard of care.

85. Defendant Southern Health Partners and its employees and its agents have a duty to provide qualified personnel to perform medical and nursing services at CCNO and a duty to use reasonable care in determining the qualifications of its contractors, agents and employees who provide medical and nursing services.

86. Defendant Southern Health Partners and its employees and its agents have a duty to establish appropriate medical policies and procedures concerning the medical and nursing treatment of inmates at CCNO and a duty to adequately manage their CCNO agents, contractors, employees, as well as implement and enforce appropriate protocols, policies and procedures.

87. Defendant Southern Health Partners and its employees and its agents, contractors, employees and agents were negligent and breached their duty of care to Mr. Stewart by failing to provide appropriate medical and nursing protocols, policies and procedures under the circumstances and by failing to supervise its agents and employees.

88. Defendant Southern Health Partners and its employees and its agents failed to promulgate adequate medical protocols, policies and procedures concerning the treatment and safety of inmates with severe opiate withdrawal.

89. As a direct and proximate result of the negligent, willful, malicious, wanton and reckless conduct and acts of Defendant Southern Health Partners and its employees and its agents, Mr. Stewart suffered and died.

90. Defendant Southern Health Partners and its employees and its agents, acted in a negligent, reckless, intentional, malicious, wanton, willful, and deliberately indifferent manner and breached their duty to provide medical care to Mr. Stewart during his incarceration, proximately causing injury and death to Mr. Stewart all in violation of Ohio law.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE/MALPRACTICE BY PHYSICIAN**

91. Plaintiff realleges and restates each of the above paragraphs as if fully rewritten herein.

92. Defendant Dr. Alzuhaili owed a duty of reasonable care to Mr. Stewart.

93. Defendant Dr. Alzuhaili failed to use reasonable care in monitoring his cardiac devices and prescriptions and in diagnosing and treating the symptoms experienced by Jared Stewart. Defendant Dr. Alzuhaili breached the duty of care to Mr. Stewart.

94. As Medical Director and CCNO physician, Defendant Dr. Alzuhaili failed to ensure that adequate policies were in place at CCNO to appropriately identify, observe, monitor, diagnose, and treat inmates at CCNO who have implanted cardiac devices and need regular blood draws/labs and active prescription monitoring and adjustments.

95. Defendant Dr. Alzuhaili failed to train and supervise CCNO medical staff to provide services consistent with the standard of care.

96. The conduct of Defendant Dr. Alzuhaili deviated from standard medical practice, all

in violation of Ohio law. The conduct was the proximate cause of Mr. Stewart's injury and death.

## FIFTH CAUSE OF ACTION – NEGLIGENCE/MALPRACTICE BY NURSES

97.     Plaintiff realleges and restates each of the above paragraphs as if fully rewritten herein.

98.     Defendants Health Administrator, Bruinix, Etgen, and Does #6-10 breached their duty to provide to Mr. Stewart reasonable medical and nursing care consistent with standard medical practices in violation of Ohio law.

99.     The negligence by Defendant Nurses includes, but is not limited to: failing to meet the applicable standard of care; failing to properly observe Mr. Stewart; failing to protect Mr. Stewart; failing to properly monitor Mr. Stewart; failing to properly medicate, and failing to provide all necessary and required information to Defendant Dr. Alzuhaili so that he could render Mr. Stewart the necessary medical care he required; and failing to correctly and fully document Mr. Stewart's medical care.

100.    The conduct of the Defendant Nurses was negligent, malicious, willful, wanton and reckless.

101.    The conduct of the Defendant Nurses proximately caused Mr. Stewart's injury and death.

## JURY DEMAND

102.    Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.      Award Plaintiff compensatory damages in an amount to be shown at trial;

B.     Award Plaintiff punitive damages in an amount to be shown at trial;

C.     Award Plaintiff reasonable attorneys' fees, costs and disbursements;

D.     Award Plaintiff pre and post judgment interest;

E.     Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Wesley D. Merillat

Wesley D. Merillat (0080253)
Charles E. Boyk (0000494)
Charles E. Boyk Law Offices, LLC
1500 Timberwolf Drive
Holland, Ohio 43528
Telephone: (419) 241-1395
Facsimile: (419) 241-8731
wmerillat@charlesboyk-law.com
cboyk@charlesboyk-law.com
